IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

WILLIAM C. McCRAY                )
                                               )
v.                                     )     No. 3:11-0068
                                             )     Judge Wiseman/Bryant
SOCIAL SECURITY ADMINISTRATION     )

To:    The Honorable Thomas A. Wiseman, Jr., Senior Judge


## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to

obtain judicial review of the final decision of the Social Security Administration ("SSA" or

"the Administration"), through its Commissioner, denying plaintiff's application for

disability insurance benefits ("DIB") and supplemental security income ("SSI"), as provided

under the Social Security Act.  The case is currently pending on the pro se plaintiff's motion

for judgment on the administrative record (Docket Entry No. 14), to which defendant has

responded (Docket Entry No. 24).  Plaintiff has further filed a reply brief in support of his

motion.  (Docket Entry No. 26)  Upon consideration of these papers and the transcript of the

administrative record (see Docket Entry No. 10),[1] and for the reasons given below, the

undersigned recommends that plaintiff's motion for judgment be DENIED and that the

decision of the SSA be AFFIRMED.

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

# I. Introduction

Plaintiff filed his DIB and SSI applications on July 18, 2007, alleging disability onset as of April 1, 2006 due to a frozen shoulder and right-eye blindness, as well as vertigo, arthritis, and severe depression. (Tr. 110-24, 138, 181) His claim to benefits was denied initially and upon reconsideration by the State agency providing local administration of the SSA's function. (Tr. 57-62, 69-74) Thereafter, plaintiff requested and received a de novo hearing of his case before an Administrative Law Judge ("ALJ"). The hearing convened on April 5, 2010, when plaintiff appeared with a representative and gave testimony. (Tr. 21-48) Testimony was also received from an independent vocational expert. At the conclusion of this proof, the ALJ closed the record and adjourned the hearing, taking the matter under advisement until May 10, 2010, when he issued a written decision denying plaintiff's claim. (Tr. 9-16) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since April 1, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 et seq.).

3. The claimant has the following severe impairments: degenerative joint disease and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant, who is right hand dominant, has the residual functional capacity to sit 6 hours in an 8-hour workday and stand/walk 6 hours in an 8-hour workday. The claimant can lift/carry 10 pounds frequently and 20 pounds

occasionally with the right upper extremity and smaller objects or a maximum of 10 pounds with the left upper extremity. The claimant could only occasionally climb, balance, kneel, crouch, squat, or balance and he could never climb ladders or work at heights. The claimant has only mild mental deficits and would be able to perform detailed tasks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 17, 1960 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 11-13, 15-16)

On November 20, 2010, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has

jurisdiction.  42 U.S.C. §§ 405(g), 1383(c)(3).  If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive.  <u>Id</u>

## II.  Review of the Record

The following review is taken from the statement of the case within defendant's brief (Docket Entry No. 24 at 2-11), to which plaintiff voices no significant opposition.

<u>Medical Evidence</u>

Plaintiff was treated four times a year at Harpeth Medical Group from 2005 through 2007 (Tr. 307-20, 629-30).  On August 3, 2005, plaintiff complained of abdominal pain and increased stress (Tr. 320).  It was noted that his abdominal symptoms were likely caused by stress and that he was not taking his Paxil regularly.  <u>Id.</u>  Depression and anxiety were noted.  <u>Id.</u> Plaintiff's joints were stable with normal range of motion and plaintiff did not complain of joint or other musculoskeletal pain.  <u>Id.</u> His condition was the same at his next visit on September 8, 2005, and he was continued on Paxil (Tr. 318).

Plaintiff was seen again at Harpeth on September 28, 2005, for stomach pain (Tr. 317).  Depression and anxiety were not noted at that visit, nor was there any mention in the notes of pain or other issues related to plaintiff's arms and shoulders.  <u>Id.</u>  On February 20, 2006, plaintiff was seen at Harpeth for neck pain following a car accident (Tr. 307).  The doctor noted pain in plaintiff's left arm, right leg and neck and prescribed pain medication.  <u>Id.</u>

Plaintiff was seen next at Harpeth on August 20, 2007, for a follow-up regarding headache, dizziness, anxiety, stress and depression (Tr. 630).  Plaintiff did not

complain of pain in his arms, shoulders or joints. Id. He was seen again at Harpeth regarding headache and dizziness on September 17, 2007 (Tr. 629).

Albert J. Gomez, M.D., performed a consultative examination of plaintiff on November 7, 2007 (Tr. 324-27). Plaintiff reported chronic pain in both shoulders and chronic depression (Tr. 324). Upon physical exam, Dr. Gomez noted that plaintiff guarded his left shoulder and got on and off the exam table with moderate difficulty (Tr. 325). Dr. Gomez found full range of motion in the right shoulder (Tr. 326). The left shoulder had mild tenderness, with limited range of motion. Id. Motor strength was 4/5 in the left arm with plaintiff complaining of shoulder pain, and 5/5 in the right arm. Id. Dr. Gomez opined that plaintiff could occasionally lift 20 pounds and could stand or sit at least six hours in an eight-hour workday, but would have difficulty reaching and lifting overhead (Tr. 326-27). He diagnosed plaintiff with decreased visual acuity in the right eye, chronic shoulder pain, degenerative joint disease and chronic depression, for which he recommended a psychiatric evaluation (Tr. 327).

James P. Gregory, M.D., prepared an RFC assessment on November 19, 2007, after reviewing Dr. Gomez's report (Tr. 328-35). Dr. Gregory opined that plaintiff could occasionally lift or carry 20 pounds, could frequently lift or carry 10 pounds, could stand or walk six hours in an eight-hour workday, could sit six hours in an eight-hour workday and could do unlimited pushing or pulling (Tr. 329). He opined that plaintiff had no postural, visual or communicative limitations (Tr. 330-32). Plaintiff was limited in reaching in all directions, including overhead, but had no other manipulative limitations (Tr. 331). Dr. Gregory opined that plaintiff should avoid exposure to hazards such as machinery and heights, but had no other environmental limitations (Tr. 332). Dr. Gregory concluded that

plaintiff was partially credible in that the medical evidence supported plaintiff's allegations but not the severity of his complaints (Tr. 335). He noted that plaintiff's left shoulder did show decreased range of motion, which would limit his overhead reaching on the left. Id. Dr. Gregory concluded that plaintiff was expected to retain the ability to do light work with occasional overhead lifting. Id.

Deborah Doineau, Ed.D., performed a consultative examination of plaintiff on December 6, 2007 (Tr. 336-43). She noted that plaintiff may not have been forthcoming regarding some aspects of his history, especially past substance abuse (Tr. 336). She also noted that she had no documentation to review, so that all of her information came from the plaintiff and her own observations of him (Tr. 336-37). She recommended that the reader of her report seek additional sources of information due to her lack of longitudinal or other data (Tr. 337). Plaintiff reported a history of depression but no hospitalizations for depression or anxiety and no suicide attempts. Id. He reported using cocaine and cannabis off and on, stopping in 2006, and drinking an occasional beer. Id. His mental status exam showed that his memory was intact, his affect was blunted, his mood was mildly dysphoric, he was not suicidal, his insight was somewhat limited, his judgment appeared to be questionable, and his psychomotor status was within normal limits (Tr. 339-40). Dr. Doineau opined that plaintiff had no limitation in understanding and remembering, moderate limitation in sustaining concentration and pace, mild social limitation and moderate limitation in adaptability (Tr. 341).

P. Jeffrey Wright, Ph.D., prepared a Psychiatric Review Technique form on December 20, 2007, finding that plaintiff suffered from major depressive disorder (moderate, single episode) and cocaine and cannabis dependence reported to be in early remission (Tr.

348-61). He opined, based in part on a review of Dr. Doineau's report, that plaintiff had mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation (Tr. 358). Dr. Wright noted that plaintiff reported that he was homeless, borrowed money for food, visited family members, attended to mail and personal business, kept up with appointments, looked after personal needs and was able to pay bills (Tr. 360).

Dr. Wright also prepared a Mental RFC Assessment, in which he opined that plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace; interact appropriately with the general public; and respond appropriately to changes in the work setting (Tr. 344-45). Dr. Wright opined that plaintiff was not significantly limited in any other area. Id. He concluded that plaintiff could understand and remember simple and detailed instructions; attend to simple and detailed tasks, maintain attention and concentration for said tasks, and complete a routine despite some difficulty; interact with the general public despite some difficulty; and adapt to changes despite some difficulty (Tr. 346).

Saul A. Julaio, M.D., prepared an RFC assessment in April 15, 2008, after reviewing Dr. Gomez's report and other medical records (Tr. 647-54). Dr. Julaio opined that plaintiff could occasionally lift or carry 50 pounds, could frequently lift or carry 25 pounds, could stand or walk six hours in an eight-hour workday, could sit six hours in an eight-hour workday and could do unlimited pushing or pulling (Tr. 648). He opined that plaintiff could

occasionally climb ladders, ropes or scaffolds but had no other postural limitations (Tr. 649). Plaintiff was limited in reaching in all directions, including overhead, but had no other manipulative limitations (Tr. 650). Dr. Julaio opined that plaintiff had limited depth perception and field of vision, but no other visual limitations. Id. He opined that plaintiff should avoid exposure to vibration and hazards such as machinery and heights, but had no other environmental limitations (Tr. 651). Dr. Julaio opined that Dr. Gomez's opinion was too restrictive based on plaintiff's full range of motion in his joints with the exception of his left shoulder (Tr. 653).

Frank D. Kupstas, Ph.D., prepared a Psychiatric Review Technique form on May 18, 2008, finding that plaintiff suffered from major depressive disorder (moderate) and history of cocaine and marijuana dependence (Tr. 633-46). He opined that plaintiff had mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation (Tr. 643).

Dr. Kupstas also prepared a Mental RFC Assessment, in which he opined that plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace, and respond appropriately to changes in the work setting (Tr. 655-56). Dr. Kupstas opined that plaintiff was not significantly limited in any other area. Id. He concluded that plaintiff was not limited in understanding and memory or social interaction; that he was able to maintain concentration, persistence and pace over extended periods for simple tasks, and detailed tasks with some difficulty at times; and was able to respond to routing changes (Tr. 657).

Plaintiff began treatment at the VA on May 27, 2009, reporting a history of tobacco use, depression, arthritis, vision loss and shoulder pain (Tr. 671). On exam, plaintiff reported pain intensity of four out of ten, and pain and limited mobility in his shoulder joints (Tr. 669, 671). X-rays of plaintiff's shoulders showed that both shoulders had early degenerative changes to the shoulder joint, with no evidence of fracture, dislocation or other acute pathology (Tr. 740). Plaintiff reported a history of depression dating to the 1970s, when he was in the Army, worsening in 2000 when his wife left him, among other stressors (Tr. 668). Evaluation showed a depressed mood with sad affect. Id. Plaintiff's cognition was intact and his insight was good. Id. Depression screening was negative (Tr. 674). He was prescribed Celexa and Seroquel, which he previously had been receiving from a private doctor but had not taken in one month (Tr. 668). Screening found no barriers to learning or problems with daily activities (Tr. 675).

Plaintiff was seen at the VA for a psychiatric consult on June 11, 2009 (Tr. 664-67). He reported depression for several years, causing occasional crying spells, poor sleep, inconsistent appetite, poor energy and feelings of helplessness (Tr. 664). He denied suicidal ideation, feelings of hopelessness or worthlessness, and manic or psychotic episodes. Id. He reported no inpatient psychiatric treatment, although he had attended 10 psychotherapy visits for treatment of depression (Tr. 665). He was diagnosed with major depressive disorder, recurrent, mild-moderate, without psychotic features (Tr. 667). His Celexa dose was increased, his Seroquel was stopped, and he was prescribed trazadone for sleep. Id.

Plaintiff was examined at Nashville Eye Associates on July 13, 2009, upon referral from the VA (Tr. 732). He reported being hit by a rock in the right eye when he was

eight years old.  Id.  He reported that he noticed trouble reading and that his distance vision was okay.  Id.

Plaintiff also was seen at the VA on July 13, 2009, for a psychiatric outpatient appointment (Tr. 661-63).  He reported depression, with his main stressors financial as he was awaiting a determination of his Social Security disability claims, as well as frustration with his shoulder problems (Tr. 661).  He reported problems maintaining sleep, low energy level, and feelings of helplessness.  Id.  He requested discontinuation of Celexa, as he believed it was causing sinus problems and rhinitis.  Id.  His mental status exam showed a sad mood, logical thought process, appropriate thought content, fair insight, fair judgment, fair impulse control and fair reliability (Tr. 662-63).  His medication was switched from Celexa to Effexor (Tr. 663).

He reported a slight improvement in his sleep at a visit to the VA on August 12, 2009, but not much change in his mood (Tr. 688).  It was noted that he was only taking half of the prescribed dose of Effexor.  Id.  His mental status exam was unchanged from the previous visit (Tr. 690).

On September 3, 2009, plaintiff reported that he was compliant with and tolerating his medications (Tr. 685).  He reported marked improvement in his sleep, getting seven to eight hours a night and feeling rested in the morning.  Id.  He also reported feeling a little better regarding his concentration and energy level, although he worried about financial issues and housing.  Id.  His mental status exam showed that his mood was better and he had a Global Assessment of Function ("GAF") score of 61-65, indicative of the clinician's judgment that he experiences some mild symptoms but generally is functioning pretty well (Tr. 686-87).

Plaintiff reported at the VA on December 23, 2009, that medical problems were making him more depressed and sad, but that he was sleeping well, had a good appetite and had a fairly good energy level (Tr. 753). His mental status exam showed a sad mood but was otherwise unchanged (Tr. 754). His Effexor dose was increased and he was advised to return in three months (Tr. 754-55).

Plaintiff was examined at the VA on March 25, 2010, by Dr. Shipra Putatunda, who was seeing plaintiff for the first time, for a psychiatric appointment (Tr. 751-52). Plaintiff reported forgetting to take his medication from time to time because he was homeless and moved from place to place (Tr. 751). He reported poor sleep, no problem with his appetite and occasionally drinking beer when he has money to help him relax. Id. His exam showed no thought or perceptual disturbances, a sad mood, appropriate affect, intact memory, good concentration, average intelligence, unimpaired judgment and insight, and no suicidal or homicidal ideations. Id. Dr. Putatunda reported a GAF score of 60, indicative of moderate psychological symptoms and moderate functional difficulties (Tr. 752). Plaintiff's Effexor dose was increased and he was advised to return in two months. Id.

Dr. Putatunda also prepared a Mental Impairment Questionnaire (Tr. 766-68). Plaintiff's diagnosis was listed as major depressive disorder, moderate, recurrent, without psychotic features and his GAF score as 55-60 (Tr. 766). Dr. Putatunda listed the following signs and symptoms: sleep disturbance; mood disturbance; emotional lability; recurrent panic attacks; anhedonia or pervasive loss of interests; psychomotor retardation; feelings of guilt/worthlessness; suicidal ideations or attempts; social withdrawal or isolation; blunt and flat affect; decreased energy; and generalized, persistent anxiety. Id. Dr. Putatunda noted that she had only one contact with the plaintiff, but did not believe he was a malingerer. Id.

She noted that plaintiff was withdrawn, tearful and quiet, was alert and oriented, and denied suicidal thoughts (Tr. 767). She also noted that plaintiff denied any side effects from his medication. Id. She opined that plaintiff's pain was making him more depressed, and that his chronic pain might interfere with his ability to work at a regular job on a sustained basis. Id. She opined that plaintiff had marked restriction of activities based on his left shoulder impairment; moderate difficulties in maintaining social functioning; and often experienced deficiencies in concentration, persistence or pace (Tr. 768). Dr. Putatunda stated that she could not comment on whether plaintiff experienced any episodes of decompensation. Id.

<u>Non-Medical Evidence</u>

Plaintiff was born on July 17, 1960 (Tr. 110), making him 49 years old at the time of the ALJ's decision. He graduated from high school in1977 (Tr. 143).

<u>Vocational Expert Testimony</u>

At the hearing, the ALJ solicited the testimony of an impartial vocational expert ("VE"), Terry Vandermolen, regarding plaintiff's ability to perform his past work and other work existing in the national economy (Tr. 43-47). The VE testified that plaintiff's past relevant work as an automotive machinist was medium and skilled (Tr. 44).

The ALJ asked the VE to assume a hypothetical individual with plaintiff's age, education and past relevant work who could perform light work, but could only lift 10 pounds with his left arm and could only use that arm occasionally; could only lift his right arm to his chin, but could not abduct to rotate the arm; could occasionally crawl, squat, stoop, bend or climb; could never climb ladders or work at heights; had mild deficits in concentration, attention, and relating to coworkers, supervisors and the public; could

respond appropriately to routine changes in the work environment; and could perform detailed tasks (Tr. 45). After the VE testified that such an individual could not do plaintiff's past relevant work based, in part, on the hypothetical individual's exertional limitations, the ALJ asked the VE whether such an individual could perform any work existing in the regional or national economy (Tr. 45-46). The VE responded that such a hypothetical individual could work as an usher (50,000 jobs in the national economy and 5,000 in the local economy); rental clerk (100,000 jobs in the national economy and 10,000 jobs in the local economy); or mail clerk (85,000 jobs in the national economy and 8,500 jobs in the local economy) (Tr. 46).

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

## B. <u>Proceedings at the Administrative Level</u>

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." <u>Id.</u> at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2) A claimant who does not have a severe impairment will not be found to be disabled.

3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.

4) A claimant who can perform work that he has done in the past will not be found to be disabled.

5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

<u>Cruse v. Comm'r of Soc. Sec.</u>, 502 F.3d 532, 539 (6th Cir. 2007)(citing, <u>e.g.</u>, <u>Combs v. Comm'r of Soc. Sec.</u>, 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

C. Plaintiff's Statement of Errors

Plaintiff alleges the following errors in the ALJ's decision: (1) that the ALJ erroneously found that plaintiff sought no medical care for his pain during the period under review; (2) that the ALJ failed to give full consideration to plaintiff's chronic left shoulder pain; (3) that the opinions of unnamed treating physicians with the Veterans Administration

15

Hospital were not appropriately considered; (4) that the ALJ failed to consider evidence of plaintiff's residual shoulder pain from two surgeries which preceded his injury in a motor vehicle accident in February 2006; (5) that the ALJ did not consider all of the findings of Dr. Gomez, the consultative physical examiner; (6) that the ALJ mis-reported the findings of Dr. Doineau; (7) that the ALJ improperly rejected his subjective complaints of pain; (8) that the ALJ improperly rejected the opinion of Dr. Putatunda, a treating source; and (9) that he meets the criteria of Listings 1.02 (major dysfunction of a joint) and 12.04 (affective disorder). (Docket Entry No. 14)

Taking these contentions in reverse order, it is clear that plaintiff's physical and mental impairments do not meet or equal all the criteria of Listings 1.02 or 12.04, so as to render him presumptively disabled. The ALJ specifically analyzed the proof by reference to these two listings (Tr. 11-12), and plaintiff himself acknowledged earlier in his brief that "[i]t is not his contention that any of his conditions meet or equal any of the listed impairments." (Docket Entry No. 14 at 1) The contrary, one-sentence argument at the conclusion of plaintiff's brief (id. at 2, ¶ 10), is unavailing.

With respect to the opinion of Dr. Putatunda, the ALJ correctly noted that Dr. Putatunda was a "one-time examining source" (Tr. 14), not a treating source, and sufficiently explained the weight given to this psychiatrist's opinion (Tr. 766-68) that plaintiff's chronic shoulder pain might interfere with his ability to sustain work: "The undersigned has assigned minimal weight to this conclusion as it is outside the spectrum of Dr. Putatunda's [mental] evaluation, and is inconsistent with treatment records, which show the claimant's symptoms have remained relatively stable with very conservative care with no significant

limitations identified on physical examination or diagnostic studies." (Tr. 14)  This finding is supported by substantial evidence.  Although plaintiff refers to Dr. Putatunda as his "lead and treating physician" (Docket Entry No. 26 at 4), it is clear that this doctor is not deserving of such status under the regulations, as her one prior contact with plaintiff would not allow her to "provide a detailed, longitudinal picture" of plaintiff's medical impairments.  20 C.F.R. §§ 404.1527(d)(2), 416.967(d)(2).  In addition to straying from the realm of psychiatry, Dr. Putatunda's opinion was formed after only one examination, and is less than authoritative at that, stating that the doctor did not believe that plaintiff was a malingerer, while qualifying that statement with the notation that she had only one contact with plaintiff, and also noting that plaintiff's chronic pain "might" interfere with work performance and his mental impairment could "possibly" be expected to last for 12 months.  (Tr. 766-67)  The Sixth Circuit has recognized that, under the regulations, 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5), opinions outside of a medical source's area of expertise should generally be viewed as deserving less weight than the opinions of other sources who practice in the particular area, here physical medicine.  See Payne v. Comm'r of Soc. Sec., 402 Fed. Appx. 109, 115 (6th Cir. Nov. 18, 2010).  In sum, the ALJ was fully justified in giving minimal weight to Dr. Pututunda's opinion of plaintiff's inability to work.

With regard to plaintiff's subjective complaints of disabling pain, upon finding "a medically determinable impairment(s) that could reasonably be expected to produce [the claimant's] symptoms," the ALJ is required to then evaluate the intensity and persistence of those symptoms by reference to the record as a whole, including both the objective medical evidence and other evidence bearing on the severity of the claimant's functional limitations.

20 C.F.R. § 416.929(c)(1)-(3).  There is no question that a claimant's subjective complaints

can support a finding of disability -- irrespective of the credibility of that claimant's

statements before the agency -- if they are grounded in an objectively established,

underlying medical condition and are borne out by the medical and other evidence of

record.  Id.; see, e.g., Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997); SSR

96-7p, 1996 WL 374186, at *1, 5 (describing the scope of the analysis as including "the

objective medical evidence, the individual's own statements about symptoms, statements and

other information provided by treating or examining physicians or psychologists and other

persons about the symptoms and how they affect the individual, and any other relevant

evidence in the case record[;]" "a finding that an individual's statements are not credible, or

not wholly credible, is not in itself sufficient to establish that the individual is not

disabled.").

    Here, after finding that plaintiff's medically determinable impairments could

reasonably be expected to cause the symptoms of pain and depression, the ALJ found

plaintiff's allegations of the intensity, persistence, and limiting effects of these symptoms to

be inconsistent with the record as a whole.  With respect to plaintiff's pain, the ALJ deemed

these complaints significantly undermined by plaintiff's own statement to his treatment

providers that his shoulder pain was only a 4 on a 10-point scale in May 2009 (Tr. 674), and

at worst a 6 on a 10-point scale thereafter.  (Tr. 14)  While plaintiff argues that his level of

pain might be rated higher on the scale by another person (Docket Entry No. 14 at 2, ¶ 8), it

is plaintiff's own subjective feeling that is at issue here.  Moreover, the ALJ rightly noted the

record of conservative treatment of plaintiff's left shoulder impairment, as well as

consultative examiner Dr. Gomez's recording of only mild to moderate deficits in left

shoulder functioning.  (Tr. 13-14)[2]  Particularly in the absence of a more restrictive opinion

from a treating source, the ALJ was justified in relying upon the findings of Dr. Gomez, and

that physician's opinion that plaintiff could perform the demands of light work as long as he

was not required to reach or lift overhead.  (Tr. 14)  Though plaintiff faults the ALJ for not

detailing his consideration of "other evidence" under 20 C.F.R. § 404.1529(c)(3) and Soc. Sec.

Rul. 96-7p (Docket Entry No. 26) -- evidence which might substantiate his allegation of

disabling pain notwithstanding the lack of objective medical proof of same -- it is clear that

the ALJ considered such other evidence, and in any event, it would appear that such

consideration is of lesser importance when the medical evidence reveals complaints of pain

at a much lower level than commonly construed as potentially disabling.

     While the bulk of plaintiff's argument regarding the ALJ's credibility

determination focuses on his physical pain, with respect to the symptoms of plaintiff's

mental impairment, it appears that the ALJ was justified in relying on the 2007 report of

consultant Deborah Doineau, Ed.D. (Tr. 336-42),[3] and the more recent treatment notes from

---

[2]Plaintiff argues that the ALJ erred by ignoring Dr. Gomez's diagnoses of decreased visual
acuity in the right eye, chronic shoulder pain, degenerative joint disease, and chronic depression.
(Tr. 327)  However, in determining plaintiff's RFC, the ALJ appropriately focused not on the
diagnoses themselves, but on the degree of functional limitation resulting from these diagnosed
conditions, such as Dr. Gomez reported in his "medical assessment of ability to do work-related
activities" just before offering his diagnostic impressions (Tr. 326-27).  See Wallace v. Astrue, 2009
WL 6093338, at *8 (S.D. Ohio Dec. 1, 2009) (citing Young v. Sec'y of Health & Human Servs., 925
F.2d 146 (6th Cir. 1990)).

[3]While plaintiff argues that "[t]he findings of Dr. Deborah Doineau are reported differently
than the findings that the ALJ reported and based his decision on using the information that she
found during her evaluation" (Docket Entry No. 14 at 2, ¶ 7), the undersigned finds no discrepancy
here.  The ALJ repeated Dr. Doineau's assessment that plaintiff "had no problems

the VA (Tr. 685-755) in concluding that plaintiff, with the benefit of prescribed treatment, has only mild functional deficits as a result of his depression. Records of his treatment at the VA from May 2009 to March 2010, supra at 9-11, bear out this conclusion. In the most recent VA treatment record, dated March 25, 2010, plaintiff was noted to be sad and crying during the interview, but reported forgetting to take his medications from time to time, and was noted to be fully oriented with no thought or perceptual disturbances, with an appropriate affect, intact memory, good concentration, average intelligence, and unimpaired judgment and insight. (Tr. 751) At his hearing, plaintiff testified that his depression was secondary to his shoulder pain in terms of its effects on his functioning, and was essentially a situational depression. (Tr. 37-38) Thus, substantial evidence supports the ALJ's treatment of plaintiff's mental limitations.

Plaintiff's remaining arguments may be read collectively to allege error in the ALJ's failure to consider his history -- preceding the alleged onset date of disability -- of chronic shoulder pain and the medical treatment of that pain, instead improperly focusing on the relative dearth of treatment records generated after April 2006, when plaintiff was unemployed, uninsured, and impoverished. However, the ALJ clearly cannot be said to have erred in focusing on the time period in which plaintiff claims to have become disabled. Despite the fact that there was "no ongoing [left shoulder] symptomatology reported or exhibited when [plaintiff] recommenced medical care ... in August 2007," and Dr. Gomez's findings of "normal external range of motion in the left shoulder, but limited abduction/forward elevation, moderate left shoulder tenderness to palpation, and 4/5 left

---

comprehending/remembering, only mild problems interacting socially, and moderate limitations with adaptability or sustaining concentration/pace[.]" (Compare Tr. 14 with Tr. 341)

shoulder strength with reports of pain" (Tr. 13-14), the ALJ found that plaintiff was limited to lifting 10 pounds frequently with his nondominant left upper extremity (Tr. 12), and went further in questioning the VE to assure that any potential jobs would accommodate restrictions to only occasional use of the left arm, and lifting only as high as chin level, without abducting or rotating the left shoulder (Tr. 45). The ALJ was entitled to rely on the resulting expert testimony to the existence of a significant number of such jobs that plaintiff could be expected to perform, despite these significant upper extremity limitations and mild mental deficits. E.g., Wright v. Massanari, 321 F.3d 611, 616 (6th Cir. 2003). Accordingly, the final decision that plaintiff is not disabled by his combination of impairments is supported by substantial evidence on the record as a whole, and is deserving of affirmance.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record (Docket Entry No. 14) be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 1st day of March, 2012.

 s/ John S. Bryant                          
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE